IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| RICHARD I. LOHR, II, as )<br>Administrator of the Estate )<br>of Charles David Fancher, )<br>Deceased, )<br>   )<br>   Plaintiff, )<br>   )<br>   v. )<br>   )<br>   )<br>JOSEPH EARL ZEHNER, III, )<br>et al., )<br>   )<br>   Defendants. ) | CIVIL ACTION NO.<br>2:12cv533-MHT<br>(WO) |

OPINION AND ORDER

Plaintiff Richard I. Lohr, II, as administrator of the estate of Charles David Fancher, filed this wrongful-death lawsuit against defendants Joseph Earl Zehner, III and United Parcel Service, Inc. (UPS), among others. The lawsuit arises out of a series of highway collisions that resulted in Fancher's death. The cause is before the court on Zehner and UPS's motion to exclude the testimony of administrator Lohr's proffered expert Michael Napier

1

from consideration during summary judgment and at trial by the jury.

## I.   LEGAL STANDARD

Fed. R. Evid. 702 allows experts to offer opinion testimony if:

> "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> "(b) the testimony is based on sufficient facts or data;
>
> "(c) the testimony is the product of reliable principles and methods; and
>
> "(d) the expert has reliably applied the principles and methods to the facts of the case."

Fed. R. Evid. 702.  If an expert's testimony is otherwise admissible, he may testify to the ultimate issue in a civil case.  Fed. R. Evid. 704(a).

Before an expert may testify, the court must play a gatekeeping role to ensure that the testimony is reliable.

2

See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).  Even if part of an expert's testimony is based on unreliable methodology, the court should allow those parts that are reliable and admissible.  United Fire and Cas. Co. v. Whirlpool Corp., 704 F.3d 1338, 1342 (11th Cir. 2013).

## II. BACKGROUND

The facts of this case are complex and disputed.  For the purpose of this opinion, however, it is helpful to include some basic and undisputed facts.  Early in the morning, before sunrise, Zehner was driving a UPS tractor-trailer on an interstate highway, when he collided with the rear of another tractor-trailer, and his truck turned on its side, blocking the highway.  Approximately 20 minutes later, Fancher, approached Zehner's upturned truck, collided with it, and died.

Administrator Lohr now argues that Zehner was negligent and wanton in the events leading to and following the initial collision. He also points to several accidents and violations on Zehner's record before the accident and alleges that UPS was negligent and wanton in its response to those previous infractions.

## III. DISCUSSION

Administrator Lohr proffers Napier as an expert in trucking safety and management, and no party challenges his qualifications. However, Zehner and UPS challenge Napier's testimony on several grounds, none of which would exclude the entirety of his testimony.

### A. Napier's Affidavit of April 28, 2014

In response to Zehner and UPS's motion to exclude his testimony, Napier submitted an affidavit, dated April 28, 2014, that describes in further detail the nature of his expertise and the opinions he would present at trial.

Zehner and UPS seek to exclude any information or opinions in this new affidavit as undisclosed opinions.

The Federal Rules of Civil Procedure require that a party disclose the identity of any expert witnesses and, for witnesses such as Napier who were retained as experts, a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B).  If an opinion is undisclosed, it should be excluded unless the non-disclosure "was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Administrator Lohr seems to confuse this argument with the 'sham affidavit' concept in summary-judgment proceedings.  See Tippens v. Celotex Corp., 805 F.2d 949, 953 (11th Cir. 1986)("any issue raised by affidavit which was flatly contradicted by an earlier deposition was so suspect of untruthfulness as to be disregarded as a matter of law").  Zehner and UPS argue, not that Napier's affidavit contradicts his earlier testimony, but that it

presents altogether new opinions.  That said, it is difficult to see what new opinions the affidavit puts forward or, to the extent the opinions in the affidavit differ or strengthen the basis for Napier's earlier opinions, how the new opinions prejudice Zehner and UPS in any way.  In other words, to the extent that there are new opinions in this affidavit, the non-disclosure is harmless.  The court will consider the affidavit.

## B. Standard of Care

Zehner and UPS challenge Napier's testimony with regard to the events leading to the collisions and Zehner's alleged negligence.  They argue that his "opinions are not beyond the ken of lay persons" and that the opinions "seek to impose a higher standard ... than is allowed by Alabama law."  Mot. to Exclude (Doc. No. 113-1) at 6-7.  Both of these arguments lack merit.

In order to prove negligence on the part of Zehner, administrator Lohr must show that Zehner failed to

6

exercise reasonable care, "that is, such care as [a] reasonably prudent person would have exercised under the same or similar circumstances."  Klein v. Mr. Transmission, Inc., 318 So. 2d 676, 679 (Ala. 1975) (quoting jury instructions approvingly).  Zehner and UPS argue that most jurors will have driven an automobile and that, as a result, most jurors will have a common-sense understanding of the attendant responsibilities in a crash situation.  They argue that any testimony about the differences between safely driving a truck and safely driving an ordinary automobile would impose a higher standard of care on Zehner.  In support of this proposition, they point to Gunnells v. Dethrage, 366 So.2d 1104, 1106 (Ala. 1979), which rejected an argument that minor drivers should be allowed a lower standard of care than the standard to which adults are held.

Gunnells does not support Zehner and UPS's argument because the difference between negligence in driving a tractor-trailer, as opposed to a sedan, is not a

difference in the standard of care but instead a difference in the circumstances. The reasonably-prudent-person standard applies, but the law recognizes that a reasonably prudent person acts differently in different situations. A tractor-trailer is a significantly larger and more dangerous vehicle than an automobile and it is a significantly different kind of vehicle from that driven by an ordinary juror. As a result, the circumstances within which a tractor-trailer driver must exercise care are quite different from the circumstances with which most jurors will be familiar. The testimony of an expert on how to drive a truck safely will be helpful to the jury.

Furthermore, it is well-established under Alabama law that the customs and practices within an industry may be considered by a jury, but are not determinative, when deciding whether the standard of care has been breached in a given situation. "The common usage of a business or occupation is a test of care or negligence, and is a

proper matter for consideration in determining whether or not sufficient care has been exercised." Klein, 31 So.2d at 441-42 (quoting 65 C.J.S. Negligence § 16, now found at 65A C.J.S. Negligence § 912); see also King v. Nat'l Spa & Pool Inst., Inc., 570 So. 2d 612, 616 (Ala. 1990) ("In Alabama, evidence that a defendant manufacturer complied with or failed to comply with industry standards, such as the standards promulgated by the trade association in this case, is admissible as evidence of due care or the lack of due care.").

Napier is qualified to offer insights to the jury as to the nature of driving a tractor-trailer and the industry practices for driving such a truck safely. Furthermore, under Fed. R. Evid. 704, he may offer his opinion as to whether, on his review of the various accident reports, Zehner failed to exercise the appropriate degree of care consistent with industry customs and practices.

## C. Federal Motor Carrier Safety Regulations

Zehner and UPS seek to bar Napier from offering interpretations of the Federal Motor Carrier Safety Regulations and opinions as to whether Zehner and UPS violated those regulations. They argue that any testimony about the regulations would be offering conclusions of law and intruding on the role of the court. In support, they point this court to an unpublished opinion from the Northern District of Georgia, which cited Seventh and Eighth Circuit opinions that excluded testimony about the meaning of regulations. Ricker v. Southwind Trucking, Inc., 2006 WL 5157692 at *8 (N.D. Ga. July 13, 2006) (Murphy, J.) (citing Bammerin v. Navistar Int'l Transp. Corp., 30 F.3d 898, 900 (7th Cir. 1994), and Police Ret. Sys. of St. Louis v. Midwest Inv. Advisory Serv., Inc., 940 F.2d 351, 357 (8th Cir. 1991)). However, there is no per se bar on expert testimony about regulations in the Eleventh Circuit. See United State v. Gold, 743 F.2d 800, 817 & n.10 (11th Cir. 1984) (allowing use of expert

testimony to explain complex regulations and describing such testimony in other cases); see also United States v. Sinclair, 74 F.3d 753, 757 n.1 (7th Cir. 1996) (noting that, despite Bammerin, the Seventh Circuit does sometimes permit expert testimony as to the meaning of regulations).

Alabama law does not recognize a negligence-per-se cause of action based on the Federal Motor Carrier Safety Regulations, but such regulations may be considered by a jury to determine whether a defendant exercised appropriate care for the situation. Osborne Truck Lines, Inc. v. Langston, 454 So. 2d 1317, 1326 (Ala. 1984). Furthermore, common sense suggests that trucking industry practices around safety are heavily influenced by the regulations on the industry.  There is no need to demand that Napier eliminate all references to the regulations in his testimony.

Although Napier has the experience to describe how the Federal Motor Carrier Safety Regulations are understood within the industry, there is nothing to show that he has

11

the expertise to engage in abstract interpretation of the regulations. To the extent that Zehner and UPS complain that Napier will be called to explain the regulations in the abstract, such testimony would be ungrounded and would not be useful to the jury since there is no negligence-per-se theory available. However, there is no indication of such abstract interpretations in Napier's expert report, deposition, or affidavit, and as a result, there are no such opinions to be excluded.

### D. NATMI Materials

Zehner and UPS argue that Napier should be barred from offering opinions that rely on materials of the North American Transportation Management Institute (NATMI). In arguing against the NATMI references, Zehner and UPS introduce an affidavit from the executive director of that organization. The affidavit states that, "NATMI does not set industry standards in the trucking institute." Arnold Aff. (Doc. No. 113-2) at 128. However, Napier relied on

NATMI's book, <u>Motor Fleet Safety Supervision, Principals and Practices</u>, which states that NATMI certification is designed to "designate competence with regard to the transportation industry's standards of performance, excellence and achievement." Napier Aff. (Doc. No. 130-2) at ¶ 5.  Therefore, even if such materials do not set industry standards, they could be reasonably understood to describe industry practices and would therefore be legitimate bases for Napier's opinions.  The court sees no reason that citation to NATMI materials diminishes the reliability of Napier's opinions to the extent that those opinions should not go before a jury.

E. "High Risk Commercial Driver"

Zehner and UPS seek to exclude any opinion that Zehner was a "High Risk Commercial Driver" or that his previous violations and preventable accidents should have led UPS to terminate him prior to the collisions at issue in this case.  Napier relies on two bases for this set of

13

opinions: his own experience in the trucking industry, as well as a document called the "Synthesis of Safety Practice," which was commissioned by the Federal Motor Carrier Safety Administration and issued by the Transportation Research Board of the National Academies.

UPS and Zehner argue that Napier's opinion regarding Zehner's record and UPS policies do not have sufficient basis to be reliable. However, in his deposition Napier makes clear that he is offering his opinion based in part on his experience in the trucking industry and his review of numerous trucking company policies. See, e.g. Napier Dep. (Doc. No. 130-3) at 91:22-25 ("There's not a single standard that I've ever read or any company policy that would accept a driver that had three moving violations in three months that they would retain."). He says that his reference to the Synthesis was intended "as a support to what I'm saying I understand the industry standards to be with regards to issues of the high risk driver." Id. at 94:2-5.

Experience may provide sufficient foundation for an expert opinion. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee note (2000 amends.); see also United States v. Frazier, 387 F.3d 1244, 1265-66 (11th Cir. 2004). In this case, the specific experience is Napier's prior review of other company's disciplinary and retention policies, which he characterizes as showing that no other policies are as lenient as UPS's.

Zehner and UPS's concerns about the reliability of the Synthesis, on the other hand, stands on stronger footing. Specifically, they challenge the reliability of the Synthesis as an indication of industry standards. The Synthesis was a survey of various trucking industry professionals on their response to safety issues. The survey was not intended as a prescriptive,

standard-setting document, and it did not have a sufficiently large response rate to be scientifically representative of industry opinion on safety issues. Napier admitted as much in his deposition.

Napier's basis in experience is sufficiently reliable for the court to admit opinions about industry practices of retention of drivers who have exhibited various forms of risky behavior and how Zehner's driving history would be evaluated in the industry. However, the court cannot conclude that the Synthesis report is also sufficiently reliable to serve as a basis for expert opinion.

Since, as of now, the phrase "High Risk Commercial Driver" appears to come from the Synthesis, Napier will be barred from using that phrase in testimony unless there is an indication at trial that the phrase is a general term of art within the industry. However, the court cannot determine from the record which of Napier's opinions on this subject would still stand absent the Synthesis report. The court believes that discerning which opinions

16

should be heard by the jury and which should be excluded is a process better left for trial, where the court can examine the witness to understand better the basis or each opinion.

Napier's opinions on this issue do not affect the court's summary-judgment analysis.

### F. Fatigue

UPS and Zehner challenge Napier's opinion that Zehner's actions are "indicative of the actions of a distracted, ill/fatigued, and/or otherwise impaired driver." Napier Rep. (Doc. No. 130-1) ¶ 5. Napier expounds further in his expert report and in his deposition testimony about the dangers of driver fatigue, but his only basis for stating that Zehner was likely fatigued or otherwise impaired is that he failed to abide by Napier's articulated standard of care and that he stated that he had "fallen asleep" and "nodded off" on several occasions. Id. These summaries add no helpful

analysis for the jury, which will be as well equipped to determine whether Zehner fell asleep as Napier is.  Napier offers no detail on how his experience might inform the summary opinions, although he does offer conclusory statements that his experience would be useful.  These statements are not sufficient for Napier's opinion to be admissible on this matter.  See Frazier, 387 F.3d at 1265-66 (affirming exclusion of expert's opinions regarding a matter outside his expertise, where his experience did not provide a basis for the opinion).

Therefore, with regard to the fatigue, UPS and Zehner's motion to exclude will be granted.


### G. "Contributing Factors"

Finally, Zehner and UPS object to Napier's use of the phrase "contributing factor" to describe his conclusions.  From the written record alone, it is difficult to determine exactly what Napier is trying to communicate with this phrase: Are they factors which contribute to his

accident, to his opinion, to something else?  To some extent, Zehner and UPS's objection seems to sound more strongly in Fed. R. Evid. 403 than Rule 702: Is the probative value of Napier's use of 'contributing factor' "substantially outweighed by a danger of ... unfair prejudice, confusing the issues, [or] misleading the jury"?  For the time being, the court will allow Napierto use this phrase in his testimony depending on the context.  However, Zehner and UPS may object at trial if context shows that the usage is prejudicial.  The use of this language will not affect the court's summary-judgment analysis.

\* \* \*

Accordingly, it is ORDERED that defendants Joseph Earl Zehner, III and United Parcel Service, Inc.'s motion to exclude the testimony of Michael Napier (doc. no. 113) is

19

**granted in part and denied in part as set forth in the above opinion.**

**DONE, this the 23rd day of June, 2014.**

                                              /s/ Myron H. Thompson
                                      **UNITED STATES DISTRICT JUDGE**