IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| RICHARD I. LOHR, II, as Administrator of the Estate of Charles David Fancher, Deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:12cv533-MHT (WO) |
| JOSEPH EARL ZEHNER, III, et al., | ) ) ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiff Richard I. Lohr, II, as administrator of the estate of Charles David Fancher, filed this wrongful-death lawsuit against defendants Joseph Earl Zehner, III, Zehner's employer United Parcel Service, Inc. (UPS), Ricky Briggs, and Briggs's employer Kevin G. Transportation (KGT). The lawsuit arises out of a series of highway collisions among Zehner, Briggs, and Fancher that resulted in Fancher's death. The cause is before the court on Zehner and UPS's motion for partial summary judgment and

Briggs and KGT's motion for summary judgment.  The motions will be granted in part and denied in part.


## I.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


## II. BACKGROUND

At approximately 4:44 on a summer morning, Briggs was driving on I-65 in rural Autauga County, Alabama,

returning a trailer for KGT. He was driving at approximately 60 miles an hour. Zehner was driving at approximately 72 miles an hour, when he struck Briggs from behind. Zehner's truck veered to the left and tipped onto its side, with the truck blocking both northbound lanes of the highway and with the cab blocking part of the grass median to the left. Briggs stopped and parked his truck so that it was blocking the emergency lane and shoulder to the right side of the highway.

Zehner and Briggs disagree as to what caused the collision. In the immediate aftermath, Zehner told Briggs, as well as a state highway trooper and a UPS investigator, that he "must have fallen asleep" and that he could not remember anything from the previous two miles of driving. <u>See</u> Zehner Dep., Pl.'s Ex. E (Doc. No. 130-5) at 110:7-14; Briggs Dep., Pl.'s Ex. D (Doc. No. 130-4) at 83:9-10; Vaughn Dep., Pl.'s Ex. I (Doc. No. 130-9) at 59:12-22. According to Zehner, this was a statement of uncertainty, and his memory loss may have

been caused by a head injury during the collision.  He now recalls that the taillights of Briggs's truck suddenly appeared before the collision, as if they had been turned off or malfunctioning.  Briggs maintains that his taillights were illuminated before the collision.

Immediately following the collision, all of the northbound lanes were blocked and several cars were stopped in front of the trucks.  After a few minutes, someone whom Briggs perceived to be in a position of authority instructed him to move his truck forward so that traffic could pass.  Briggs did so, and the cars proceeded single-file around Zehner's overturned truck.  At this time, neither Briggs nor Zehner put out reflective triangles in front of Zehner's overturned trailer.

After the traffic had cleared, Kelli Littlejohn drove toward the collision site in the right lane.  The roadway was still dark, and she saw no lights or reflective materials until she was close enough to the overturned trailer that her headlights reached the underside of

4

trailer.   At that point she swerved right into the emergency lane.   She then saw Briggs's truck ahead and swerved to the left, hitting the back left side of his truck.

Approximately ten minutes after Littlejohn drove to the right, Fancher collided with the underside of Zehner's trailer.   No one saw Fancher drive up, but administrator Lohr's accident-reconstruction expert opines that he was likely traveling at approximately 70 miles an hour, the speed limit; that he braked and swerved to the left to avoid the trailer; and that his car was still moving at approximately 50 miles an hour when it hit the overturned trailer.   Lohr's expert on human factors and visibility opines that, with low-beam headlights, Fancher was unable to see the trailer until he was within 230 feet of it and that he could not have stopped within that distance.

In the two years before the collisions, Zehner had been involved in three accidents.   In June 2010, he swerved to avoid a deer and his trailer tipped over.   In

February 2010, a tire blew on his private vehicle, causing the tread to hit another vehicle.  In March 2009, while driving a UPS truck, Zehner "had become distracted and jerked the wheel to the left, which caused his right rear ... tire to hit the concrete guard rail."  Zehner Dep. at 44:6-11 (reading UPS internal accident report).  Zehner's driving record also shows several speeding violations and four other collisions in the previous ten years.

Administrator Lohr brought this lawsuit against Zehner, Briggs, Zehner's employer UPS, and Briggs's employer KGT.[1]  Lohr asserts essentially four claims against Zehner: two negligence claims (one for conduct before the initial collision between Zehner and Briggs and one for conduct after the initial collision) and two

---

1. The nature of Briggs's employment by KGT is somewhat complicated, as Briggs may also have had an employment relationship of some kind with Wilmac Enterprises, LLC.  See Lohr v. Zehner, 2:12CV533-MHT, 2014 WL 2504574 (M.D. Ala. June 3, 2014) (Doc. No. 152).  However, the parties do not dispute that Briggs was acting on behalf of KGT at the time of the collisions at issue in this case, and this court has ruled that Wilmac is not vicariously liable for Briggs's actions in this incident.  Id.

wantonness claims (one for conduct before the initial collision and one for conduct after it). Zehner seeks summary judgment in his favor on only the two wantonness claims.

Lohr asserts essentially ten claims against UPS. Relying on vicarious liability, he asserts against UPS the same four claims he asserts against Zehner. As does Zehner, UPS seeks summary judgment in its favor on only the two wantonness claims. The remaining six claims Lohr asserts against UPS are three direct negligence claims (for entrustment, supervision, and retention) and three direct wantonness claims (for entrustment, supervision, and retention). UPS seeks summary judgment in its favor on only two of the direct wantonness claims (for entrustment and supervision) and on none of the direct negligence claims.[2]

---

2. Administrator Lohr initially raised negligent-and-wanton hiring and maintenance claims against UPS, but he has abandoned them. Lohr also abandoned negligent-and-wanton entrustment, hiring, maintenance, retention, and supervision claims against KGT.

(continued...)

Lohr asserts essentially four claims against Briggs: two negligence claims (one for conduct before the initial collision and one for conduct after it) and two wantonness claims (one for conduct before the initial collision and one for conduct after it).  Briggs seeks summary judgment in his favor on all four claims.

Finally, Lohr asserts essentially four claims against KGT.  Relying on vicarious liability, he asserts against KGT the same four claims he asserts against Briggs. KGT seeks summary judgment in its favor on all four claims.

---

2.  (...continued)
In the briefing, UPS makes arguments against the negligent-supervision claim and the negligent-retention claim, but it did not mention those claims in its motion for partial summary judgment.  Zehner and UPS Mot. for Summ. J. (Doc. No. 111).  The company includes the negligent-supervision claim in its initial brief but does not meaningfully address the claim, instead arguing exclusively against the wanton-supervision claim. Furthermore, the company does not mention the retention claims until its reply brief.  Since Lohr did not have notice to make arguments regarding those claims, it would be unfair for the court to read them into UPS's motion for summary judgment.

## III. DISCUSSION

At first glance, it may seem confusing for the court to devote significant attention in this Alabama wrongful-death case to disagreements about whether the defendants' conduct was negligent or wanton.  Generally, the major difference between an action for negligence and wantonness is the availability of punitive damages if wantonness is proven by clear and convincing evidence.  See 1975 Ala. Code § 6-11-27(a).  However, for "wrongful-death cases ... all damages are punitive damages."  Cain v. Mortgage Realty Co., Inc., 723 So.2d 631, 633 (Ala. 1998); see 1975 Ala. Code § 6-5-410(a).  In fact, plaintiffs are not permitted to present evidence about the particular value of the deceased individual based on the "concept that all human life is precious."  Estes Health Care Centers, Inc. v. Bannerman, 411 So. 2d 109, 113 (Ala. 1982).  Therefore the question of punitive damages is typically not at issue.

However, there are two reasons why the question of

9

wantonness is still important at this stage in this case. First, the defendants all argue the affirmative defenses of contributory negligence and assumption-of-risk, defenses which bar recovery for negligence actions but not for wantonness actions. McMahon v. Yamaha Motor Corp., U.S.A., 95 So. 3d 769, 773 (Ala. 2012) (contributory negligence); Chance v. Dallas County, Ala., 456 So. 2d 295, 299-300 (assumption of risk). Therefore, the presence of wantonness claims would alter the jury instructions on these defenses. Second, "the degree of reprehensibility of the defendant's conduct is perhaps 'the most important indicium of the reasonableness of a punitive damages award.'" BMW of N. Am., Inc. v. Gore, 701 So. 507, 512 (Ala. 1997) (quoting BMW of N. Am. v. Gore, 517 U.S. 559, 575 (1996)). If the jury is permitted to find only that defendants were negligent, the plaintiff may be entitled to a lower amount of damages than if the jury finds that they were wanton as well.

Since the questions with regard to wantonness affect both the affirmative defenses available to the defendants and the damages available to Lohr, the court considered the defendants' motions for summary judgment on administrator Lohr's wantonness claims.

## A. Zehner

As stated, administrator Lohr brings four claims against Zehner: that he was negligent before the collision with Briggs, that he was negligent after that collision, that he was wanton before that collision, and that he was wanton after that collision. Zehner moves for summary judgment on only the two wantonness claims.

Under Alabama law, wantonness is defined as, "Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." 1975 Ala. Code § 6-11-20(b)(3). However, "it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff." <u>Alfa Mut. Ins. Co. v. Roush</u>, 723 So. 2d 1250, 1256 (Ala. 1998).

11

First, administrator Lohr argues that Zehner's conduct before the initial collision was wanton because he fell asleep at the wheel.   Although Zehner now denies having fallen asleep at the wheel, at this stage the court must make all reasonable inferences against him.   In light of his admissions immediately after the accident, it would be reasonable for a jury to find that he did fall asleep at the wheel.   However, in Lankford v. Mong, 214 So. 2d 301 (1968), the Alabama Supreme Court established that a driver may be guilty of wantonness for falling asleep at the wheel only if there is evidence that he "continued to drive in reckless disregard of premonitory symptoms" of sleepiness. Id. at 303 (quoting 28 A.L.R.2d 72).   In Lankford, evidence that the driver was a nightclub singer who had not slept much in the previous evenings was sufficient for a jury to infer that he would have experienced "premonitory symptoms," that is, that he would have noticed that he was feeling sleepy before nodding off at the wheel.   In subsequent cases, however, Alabama

12

courts found insufficient evidence of premonitory symptoms where the driver had slept a normal amount on previous evenings and there was no other evidence or admission of drowsiness.  See, e.g. Glass v. Clark, 100 So. 3d 1074, 1084-85 (Ala. Civ. App. 2012).

Administrator Lohr presents no evidence that Zehner experienced any symptoms of sleepiness prior to the collision.  Furthermore, Zehner testified to having had plenty of sleep in the previous weekend.  The collision occurred early in the morning, after Zehner had been driving for approximately seven hours.  However, immediately before his shift, Zehner had taken a four-hour and a two-hour nap and had slept for at least seven hours the night before.  Lohr points to no evidence that Zehner was sleep-deprived or other evidence that he had any other knowledge of his own drowsiness.  Therefore, even if Zehner fell asleep, his nodding-off alone cannot support a wantonness claim.

Administrator Lohr's second wantonness claim, for Zehner's behavior after the initial collision, is more persuasive.  There were approximately 15 minutes between the initial collision and when Fancher's car hit Zehner's trailer.  During that time, Zehner did not put out reflective triangles or make the darkened underside of his trailer visible in any other way.  Federal safety regulations require drivers to place warning devices around a stopped vehicle "as soon as possible, but in any event within 10 minutes." 49 C.F.R. § 392.22(b)(1).  This regulation, among other safety training, would have put Zehner on notice that it was likely that injury could result from his leaving his truck unmarked. Injury was particularly likely given the darkness of the road and the lack of any reflective tape or lights on the underside of the trailer.  Zehner was not physically incapacitated, and a jury could find that he was not mentally incapacitated either.  Therefore, it would be reasonable for a jury to infer that he consciously decided to do

14

something else, rather than placing reflective or lighted materials in front of his overturned truck.  These facts offer sufficient evidence that a jury could find Zehner to have been wanton.

Zehner argues that his failure to make his truck visible on the roadway does not, as a matter of law, constitute wantonness.  In support, he identifies a federal case from the Northern District of Alabama in which a driver had not placed reflective triangles and summary judgment was granted for the driver on a wantonness claim: <u>Bishop v. R.A. Wagner Trucking Co., Inc.</u>, 2014 WL 636987 (N.D. Ala. Feb. 18, 2014) (Putnam, M.J.).  This court does not find <u>Bishop</u> persuasive in this case for three reasons.  First, the <u>Bishop</u> court did not address the issue of lights or reflective triangles in its discussion of wantonness.  It addressed only the driver's decision, in that case, to park in the emergency lane of an entrance ramp.  It would be unwise to draw many conclusions from the court's silence.  The parties may not

15

have argued that failure to place lights and triangles amounted to wantonness.  Second, the collision in <u>Bishop</u> occurred in daylight and off the main roadway.  In contrast, this collision occurred in darkness, with an overturned trailer blocking the entire road.  A jury could find that such an invisible barrier created a more obvious chance of injury than a visible obstacle to the side of the road.  Finally, even if the <u>Bishop</u> court would hold that failure to place triangles or light a vehicle was not wanton behavior, such a holding would run contrary to several other courts' application of similar wantonness standards.  <u>See</u> <u>Alfonso v. Robinson</u>, 514 S.E.2d 615, 619 (Va. 1999) (affirming jury instruction of wantonness for truck driver not deploying flares or triangles around disabled truck); <u>Boatright v. Sclivia</u>, 421 F.2d 949, 951-52 (10th Cir. 1970) (reversing because of failure to instruct jury on wantonness, under New Mexico law, in similar situation); <u>Kellerman v. J.S. Durig Co.</u>, 199 N.E.2d 562, 565-66 (Ohio 1964) (reversing directed verdict

on wantonness in similar situation); <u>see also</u> 61A C.J.S.
<u>Motor Vehicles</u> § 1387 (noting jury question of wantonness
"including in cases involving the parking of a vehicle
unattended without lights").[3]

Therefore, the court will grant summary judgment in
favor of Zehner on Lohr's claim for wantonness before the
initial collision between Zehner and Briggs and deny
summary judgment on Lohr's claim against Zehner for
wantonness after the collision for Zehner's failure to
place reflective triangles or otherwise illuminate his
overturned truck.

---

3. Zehner also argues that <u>Ex parte Essary</u>, 992 So.
2d 5 (Ala. 2007), stands for the proposition that it is
not wanton to fail to put oneself in danger. However, as
explained later in this opinion, <u>Essary</u> stands for a
different proposition: that courts will not infer a
conscious decision by a non-impaired person to take an
action that would put him in danger. In any event, a jury
could find that Zehner, without endangering himself,
could have found and placed a triangle near his truck so
as to warn other drivers before the Fancher collision or
he could have used his flashlight to draw attention to
the hazard.  Any argument that he was unable to do so is
a fact question for the jury to decide.

17

## B. UPS

As stated, administrator Lohr has brought ten claims against UPS.   Four of the claims seek to hold UPS vicariously liable for the negligence and wantonness of Zehner under respondeat superior.   As does Zehner, UPS moves for summary judgment on only the wantonness claims. For the reasons described above, summary judgment will be granted in favor of UPS on the wantonness claim for Zehner's actions before his initial collision with Briggs, but will be denied on the wantonness claim for his actions after the initial collision.

The other six claims allege misbehavior on the part of UPS itself with regard to its treatment of Zehner prior to the collisions:  negligent entrustment, negligent retention, negligent supervision, wanton entrustment, wanton retention, and wanton supervision.   UPS moves for summary judgment on Lohr's claims for wanton entrustment and supervision.

Since these claims overlap significantly, it is most efficient to address UPS's arguments together.  Both wanton claims challenge UPS's response to Zehner's previous crashes and speeding tickets.  Administrator Lohr argues that, having notice of those crashes and tickets, UPS should not have allowed him to continue to drive tractor-trailers.  The company insists that it followed a progressive-training-and-discipline approach that was appropriate for the circumstances and, alternatively, that the crashes and tickets were not sufficiently closely related to the collision at issue in this case for the wanton-entrustment or wanton-supervision claims to attach.

In order for either the entrustment or the supervision to constitute wantonness, UPS must have continued to allow Zehner to drive, with the company "being conscious that ... injury will likely or probably result."  <u>Jordan ex rel. Jordan v. Calloway</u>, 7 So. 3d 310, 316-17 (Ala. 2008) (quoting <u>Barker v. Towns</u>, 747 So. 2d 907, 907 (Ala. Civ. App. 1999)) (describing wanton entrustment); <u>see also Big</u>

19

B, Inc. v. Cottingham, 634 So. 2d 999, 1004 (Ala 1993) (describing wanton supervision).

In responding to Zehner's earlier crashes, UPS followed established progressive-discipline-and-training policies, as well as the collective-bargaining agreement that it had reached with Zehner's union. Therefore, in order to show that UPS had allowed Zehner to continue working with the awareness that injury would likely result, administrator Lohr would essentially have to show that UPS had adopted the discipline-and-training policies and the collective-bargaining agreement with an awareness that injury would likely result. However, Lohr provides no evidence that would allow a reasonable jury to reach that conclusion.

Therefore, summary judgment will be granted in favor of UPS on Lohr's wanton-supervision and wanton-entrustment claims.

## C. Briggs

Administrator Lohr brings four claims against Briggs: negligence before the initial collision, negligence after the initial collision, wantonness before the initial collision, and wantonness after the initial collision. Briggs moves for summary judgment on the negligence claims on the ground that Fancher, the decedent, was guilty of contributory negligence, and he moves for summary judgment on the wantonness claims on the ground that Lohr has not put forward evidence of wantonness.

### 1. Contributory Negligence

As this court discussed in an earlier case, there are complex questions as to how federal courts should adjudicate summary-judgment motions on the contributory-negligence defense under Alabama law: Bielski v. Alfred Saliba Corp., --- F.Supp.2d ---, 2013 WL 5657440 at *4-6 (M.D. Ala. October 16, 2013) (Thompson, J.).  However, regardless of the standard the court

applies, here the contributory-negligence argument falls
flat at this stage.  At the very least, Briggs would need
to show that there is no dispute of fact that Fancher
failed to exercise reasonable care.  <u>Id</u>. at *5 (quoting
<u>Hannah v. Gregg, Bland & Berry, Inc.</u>, 840 So. 2d 839,
860-61 (Ala. 2002)).

Specifically, Briggs argues that Fancher could have
avoided his collision with the underside of Zehner's truck
by swerving to the right, as Littlejohn did, instead of to
the left.  Fancher's decision to swerve left, they argue,
would be contributory negligence, either because it shows
he chose a riskier path when a safe option was available;
because it shows that he failed to keep an adequate
lookout as Littlejohn did; or because it shows that he was
traveling at an unsafe speed.

However, Briggs ignores a much more simple
explanation.  The portion of I-65 on which the collision
occurred was a two-lane road, with grass to the left side
and an emergency lane to the right side.  Littlejohn was

traveling in the right lane and was thus able to swerve right and avoid hitting Zehner's truck.  No observer saw Fancher approach the overturned trailer, but a reasonable jury could find that Fancher was traveling in the left lane.  This would have made it impossible for him to follow Littlejohn's path, even if he were traveling at a reasonable speed and keeping an adequate lookout.

Because a reasonable jury could find that Fancher's collision was unavoidable or that he exercised reasonable care in advance of the collision, Briggs is not entitled to summary judgment his contributory-negligence defense and thus is not entitled to summary judgment on Lohrs negligence claims against him.

## 2. Wantonness

Adminstrator Lohr argues that Briggs's conduct was wanton before the initial collision because, with the facts construed against Briggs, Briggs failed to have his taillights on until shortly before Zehner hit him.  Lohr

argues that Briggs was wanton after the initial collision because he did not place reflective triangles or other illumination around Zehner's overturned truck.

In Ex parte Essary, 992 So. 2d 5 (Ala. 2007), the Alabama Supreme Court identified a presumption that, "Absent some evidence of impaired judgment, such as from the consumption of alcohol, we do not expect an individual to engage in self-destructive behavior." Id. at 12. In that case, a driver had tried to cross an intersection between two moving vehicles, causing an accident. The court refused to find such behavior to reflect a conscious decision to engage in reckless behavior, the definition of wantonness, because such reckless behavior would have put the driver himself in danger. Therefore, the conduct could be understood as "'at best,' an 'error in judgment.'" Jinright v. Werner Enterprises, Inc., 607 F.Supp.2d 1274, 1276 (M.D. Ala. 2009) (Thompson, J.) (quoting Essary, 992 So. 2d at 12).

In this case, there is no evidence that Briggs was impaired in any way. Driving on the highway with his taillights off would be extremely self-destructive. Briggs would be at least as likely to be injured as anyone else. For that reason, no reasonable jury could find that he consciously took the risk of driving without taillights. He cannot be found wanton for actions before the initial collision.

However, a reasonable jury could find Briggs to have been wanton after the initial collision in failing to illuminate the UPS trailer before allowing traffic to go forward. For the reasons discussed above, a jury may find wantonness when a truck driver leaves his own vehicle unlit within traffic. In the context of this accident, Briggs may have had a similar duty with regard to Zehner's vehicle. A jury could find that this duty to warn other drivers arises under either of two scenarios: because Briggs caused the collision with Zehner or because, although he did not cause the collision, he was still

aware of the dangerous condition.  See Napier Rep. at 15-17 (describing the duty to place reflective triangles as applying to an accident scene rather than only one's own vehicle).

Therefore, the court will grant summary judgment in favor of Briggs on administrator Lohr's claim for wantonness before the initial collision between Briggs and Zehner and deny summary judgment on Lohr's claim against Briggs for wantonness after the collision for Briggs's failure to place reflective triangles or otherwise illuminate Zehner's overturned truck.


### D. KGT

Finally, as stated, administrator Lohr seeks to hold KGT vicariously liable for each of the four claims brought against Briggs under respondeat superior, and the company has joined with Briggs in his motion for summary judgment on these claims.  For the reasons discussed above, summary judgment will be granted in favor of KGT on Lohr's claim

that Briggs was wanton before the initial collision and
will be denied all other wantonness and negligence claims
asserted by Lohr against KGT.

* * *

Accordingly, it is ORDERED as follows:

(1) Defendants Joseph Earl Zehner, III and United
Parcel Service, Inc.'s motion for partial summary judgment
(Doc. No. 111) is granted as to (a) the wantonness claims
against them for defendant Zehner's actions before the
initial collision and (b) the direct wanton-supervision
and wanton-entrustment claims against defendant United
Parcel Service, Inc.

(2) Defendants Zehner and United Parcel Service,
Inc.'s motion for partial summary judgment (Doc. No. 111)
is denied in all other respects.

(3) The following claims against defendant Zehner will
go to trial: (a) plaintiff Richard I. Lohr's two
negligence claims (one for defendant Zehner's conduct

before the initial collision and one for his conduct after the initial collision) and (b) plaintiff Lohr's wantonness claim for defendant Zehner's conduct after the initial collision.

(4) The following claims against defendant United Parcel Service, Inc. will go to trial: (a) plaintiff Lohr's the two negligence claims (one for defendant Zehner's conduct before the initial collision and one for his conduct after the initial collision); (b) plaintiff Lohr's wantonness claim for defendant Zehner's conduct after the initial collision; (c) plaintiff Lohr's three direct negligence claims for entrustment, supervision, and retention; and (d) plaintiff Lohr's direct wantonness claim for retention.

(5) Defendants Ricky Briggs and Kevin G. Transportation, Inc.'s motion for summary judgment (Doc. No. 114) is granted as to the wantonness claims against them for defendant Briggs's actions before the initial collision.

(6) Defendants Briggs and Kevin G. Transportation, Inc.'s motion for summary judgment (Doc. No. 114) is denied in all other respects.

(7) The following claims against defendant Briggs will go to trial: (a) plaintiff Lohr's two negligence claims (one for defendant Briggs's conduct before the initial collision and one for his conduct after the initial collision) and (b) plaintiff Lohr's wantonness claim for defendant Briggs's conduct after the initial collision.

(8) The following claims against defendant Kevin G. Transportation, Inc. will go to trial:  (a) plaintiff Lohr's two negligence claims (one for defendant Briggs's conduct before the initial collision and one for his conduct after the initial collision) and (b) plaintiff Lohr's wantonness claim for defendant Briggs's conduct after the initial collision.

DONE, this the 24th day of June, 2014.

    /s/ Myron H. Thompson    
UNITED STATES DISTRICT JUDGE